WUJCIK, Plaintiff, vs. GLOBE & RUTGERS FIRE INSURANCE COMPANY OF NEW YORK, Appellant, and WRZOSEK, Respondent.

*October 13—November 8, 1927.*

*Principal and agent: Liability of agent who disobeys instructions: Insurance: Letter of underwriter to agent to cancel or to rewrite insurance: Delay in cancellation.*

1. An agent may become liable to his principal by a refusal or neglect reasonably to follow the instructions of the principal. p. 139.
2. Where an insurance agent was warranted in construing a letter from the insurer asking him to cancel a policy written by him and rewrite it for not to exceed a named amount as a direction only to procure such cancellation by agreement with the insured and to rewrite it for a new amount, and the policy could not have been legally canceled except on five days'

notice to the insured, the agent, who proceeded in the ordinary way to comply with the insurer's direction, was not guilty of a breach of duty to the insurer. p. 140.

3. Although the letter, written September 4th, was not received by the agent until September 29th, the agent was not chargeable with negligence in failing to have his mail forwarded to him while on his vacation, since the policy of insurance had been in effect nearly two months without protest from the insurer. Moreover, the insurer, who knew of the agent's delay in procuring cancellation of the policy and directed him to continue negotiations, is considered to have approved the course pursued by him. pp. 140, 141.

APPEAL from a judgment of the circuit court for Chippewa county: JAMES WICKHAM, Circuit Judge. *Affirmed.*

The issue between the plaintiff and the defendant insurance company was tried out in a former case reported in 189 Wis. 366, 207 N. W. 710. In that action the cross-complainant, hereafter called the insurance company, claimed that *Wrzosek,* hereafter called the defendant, was liable to him on the ground that he had refused and neglected to obey the instructions of his principal, to the principal's damage. Upon the remission of the case to the trial court the issue made by the answer of the defendant to the cross-complaint was tried, and there was a special verdict by which the jury found as follows:

"(1) Did the defendant *Wrzosek,* the local agent of the *Globe & Rutgers Fire Insurance Company,* receive that certain letter dated at Milwaukee, Wisconsin, August 7, 1923, written by B. A. Lehnberg on behalf of Walter Schroeder, the general state agent of said insurance company? *A.* No.

"(2) When did said *Wrzosek* personally receive that certain letter of date September 4, 1923, written to him by said general state agent? *A.* September 29, 1923.

"(3) After the receipt by said *Wrzosek* of letters from said general state agent containing instructions in reference to the cancellation of the policy of insurance issued to Ignatz Wujcik for eighty-eight hundred dollars and the issuing of another policy of insurance in said company for thirty-five hundred dollars, did said *Wrzosek* in good faith

attempt to comply with said instructions to the best of his ability?  *A.*  Yes."

Upon the coming in of the verdict both parties moved for judgment.  The insurance company's motion was denied and the defendant's motion granted.  Judgment was entered accordingly, from which the insurance company appeals.

For the appellant there was a brief by *Fish, Marshutz & Hoffman,* attorneys, and *I. A. Fish,* of counsel, all of Milwaukee, and oral argument by *Mr. Fish.*

*Roy P. Wilcox* of Eau Claire, for the respondent.

ROSENBERRY, J.  Supplementing the facts found by the jury, it appears without dispute that on August 7, 1923, the insurance company wrote the defendant as follows:

"No. 1327812—Ignatz Wujcik.

"We have daily report for the above mentioned policy covering for a total of $8,800 on a frame general store and contents, and frame flour and feed warehouse, at Polly, Wis., which line is more than we can carry in an unprotected town, and for this reason we ask you to kindly reduce our policy to an amount not exceeding $3,500.  Please cancel and rewrite our line at once, and awaiting receipt of canceled policy No. 1327812 and daily report for the new line, we are, with kind regards, . . ."

The jury found that the defendant never received this letter.  It is material only in so far as it throws light upon the subsequent correspondence.

On September 4, 1923, the insurance company wrote the defendant a second letter:

"No. 1327812—Ignatz Wujcik.

"On August 7th it was necessary for me to write and ask you to cancel this policy and rewrite for not to exceed $3,500, the original sum of $8,800 being excessive on a frame building of this kind located away from your agency and having no public fire protection.

"Up to this writing the canceled policy and new daily report have not been received, and if you will have them

come forward at once it will be very much appreciated. We would have liked to continue the line as written, but good underwriting forbids, and especially so because of the absence of fire protection, as before stated."

It further appears that about the 1st of September the defendant left his office on his vacation; that he took with him certain records pertaining to expirations, blanks necessary for re-issuance of policies, and directed his brothers, who occupied a part of the building in which his office was, to take his mail from the postoffice and send him such of it as appeared to be important. The jury found, however, that the letter of September 4th did not in fact come to the attention of the defendant until September 29th. On September 29th the defendant wrote the plaintiff as follows:

"*In re* Pol. No. 1327812—Ignatz Wujcik.

"In reply to your letter of Sept. 4th, we beg to advise that we cann't see no reason why you wish to have this policy cancell and re-insure, as we should think that you could re-insure the policy with your re-insurance company, and if you don't care to this we will cancel the policy, as per your instruction and place same with our other insurance companies that will accept the full policy of $8,800 and then they will re-insurance same with their re-insurance companies.

"We know, that if we are going to try and place two policies with two diffrent companies we will loose the business.

"Let us know by return mail and oblige."

On October 3, 1923, the insurance company replied to the defendant's letter as follows:

"No. 1327812—Ignatz Wujcik.

"We are very sorry that it is necessary to disturb the above mentioned policy, but we have no re-insurance facilities for a risk of this kind. (general store and contents outside of fire protection), and it is for that reason that we cannot carry more than $3,500—which is our gross line.

"We do not believe any of your other companies would

care to write the entire amount, but if you think the assured will insist on a single policy we will have no objection to your relieving us of the liability entirely.     However, in our opinion it would be to your client's advantage to have more than one company on the risk.

"Please take prompt action in this matter, as we do not wish to continue this amount of liability for any unnecessary period."

In reply, the defendant on October 5th wrote the insurance company as follows:

"We have canceled and rewrited to New Policy No. 1327814.—Ignatz Wujcik to the amount of $3,500 and the balance of insurance is placed in Federal $4,000 and Concordia $1,300.

"We enclosed the cancell policy herewith and oblige. . . ."

While the letter of October 5th was mailed and received by the insurance company, it was the contention of the defendant that it was sent forward by mistake; that he had expected to see Wujcik and procure a renewal of the policy and a rewriting of the insurance as indicated; that Wujcik lived some twenty miles distant in a small interior town, and it was defendant's intention that if Wujcik did not come to town as usual on Saturday, to see him on the Monday following.     Wujcik did not come to town.     The Wujcik premises were destroyed by fire on the morning of October 6th, and as a result the insurance company denied liability on its $8,800 policy, issues in that respect having been settled in a former suit.

We have stated the facts thus fully in order to disclose the entire situation.     The insurance company claims the defendant is liable because as agent it was his duty to follow the instructions given him by his principal, and that because of his failure to do so he is liable to the insurance company as principal for the resulting loss.     It is not denied that an agent may become liable to his principal by a refusal or neglect reasonably to follow the instructions of

the principal. The question argued here is whether or not the principal in fact gave instructions, or whether the so-called instructions were mere directions indicating a future course of conduct which the defendant was to pursue. Referring to the letter of September 4th the insurance company says:

"It was necessary for me to write and ask you to cancel this policy and rewrite for not to exceed $3,500, the original sum of $8,800 being excessive on a frame building of this kind located away from your agency and having no public fire protection."

Under the law of this state the outstanding policy could not be canceled except upon five days' notice, and of course a rewriting of any part of it was contingent upon a new agreement to be made with the insured. Instead of being a peremptory instruction to cancel the policy, it appears to be a direction to reopen the negotiations. Certainly it was not within the power of the defendant to comply with the instructions literally, a fact well known to the company. If the insurance company had directed the defendant to cancel the policy and thereafter if possible to rewrite a part of it, a different situation would be presented. The defendant was warranted in construing the letter as a direction to him to procure by agreement cancellation of the $8,800 policy and to rewrite a new policy for $3,500. The same attitude is disclosed in the letter of October 3d, except that the insurance company there advises the defendant that if negotiations are not successful, it would be satisfactory to it if he canceled the entire amount. The defendant was endeavoring to comply with these directions when the fire occurred which caused the loss. He proceeded in the usual and ordinary way and was guilty of no breach of duty to his principal in that respect.

It is claimed that the defendant is liable because he failed to give directions to have his mail forwarded and postponed

action on the letter of September 4th for twenty-five days. It appears that the defendant carried on his business in his usual and customary manner. It was a small country office under the personal supervision and direction of the defendant. He had no reason to suppose, when he left for his vacation, that this matter would be brought to his attention again. The insurance had been written in July and had been on the property nearly two months without any protest on the part of the insurance company as far as he knew. It is not suggested that he attempted to evade his principal. The argument is made that he gave his subagents authority to take his mail from the postoffice and that their neglect to forward the mail is the defendant's neglect, and as a consequence the defendant is liable. The defendant employed no subagent to carry on the insurance company's business. Just how an agent is to be made liable to his principal because an agent of his own, in the conduct of his own business, neglects a duty to him, is not suggested. Furthermore, with full knowledge of the delay and the reasons for it, the insurance company directed the defendant to continue the negotiations. It is considered that this amounted to approval of the course pursued by the defendant. The fact that the negotiations which were proceeding in the usual course were not completed before the fire occurred did not change the situation. The insurance company could not withdraw its implied acceptance under the circumstances.

*By the Court.*—Judgment affirmed.